UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-229-GWU


MAE HURT,                                                              PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

08-229  Mae Hurt

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

08-229  Mae Hurt

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

3

<u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Mae Hurt, filed her current application for SSI on December 27, 2004, alleging disability beginning February 28, 2004, alleging disability due to problems with her knees, back, shoulders, and arms, as well as a bilateral mastectomy.  (Tr. 73-6, 85).  An Administrative Law Judge (ALJ) determined that the plaintiff had "severe" impairments consisting of neck pain and being status post knee surgeries.  (Tr. 17).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 17-22).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether an individual of the plaintiff's age of 45, high school education, and training as a cosmetologist and certified nurse's assistant could perform any jobs if she were limited to lifting ten pounds occasionally, less than ten pounds frequently, standing and walking two hours in an eight-hour day, and sitting six hours in an eight-hour day.  (Tr. 467-8).

The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 468).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  There is an additional issue in that the plaintiff had filed a previous SSI application, which was denied in a February 27, 2004 ALJ decision (Tr. 35-42), and which was subsequently affirmed by this court on November 9, 2005 (Tr. 49-59).  The ALJ in the present case found that there was no new and material evidence or changed circumstances which would justify a departure from the residual functional capacity determined in the prior, final decision, in accordance with Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997); Acquiescence Ruling 98-4(6).

The plaintiff presented a certain amount of new evidence concerning medical treatment following the prior ALJ decision, but the court agrees with the ALJ that it does not establish a deterioration in her condition.

The new evidence includes a consultative physical examination conducted by Dr. Mark Burns on May 12, 2005.  The plaintiff described pain in her back, shoulder, arms, and knees, some of which was related to a motor vehicle accident in 2003.  (Tr. 152).  She was seeing a pain management specialist and receiving minimal relief from epidural injections.  (Id.).  She stated that pain persisted in both knees despite arthroscopic knee surgery.  (Tr. 153).  Dr. Burns found almost no

abnormalities on his examination apart from noting that she had minimal difficulty with walking and squatting. (Tr. 154). There were numerous scars on both knees from injuries and surgery, but she was able to flex and extend through normal ranges, and an x-ray of the left knee was normal. (Tr. 155-6). No functional restrictions are suggested.

The plaintiff's pain management physician, Dr. Ionut Stefanescu, submitted office notes of an examination on June 2, 2005, reflecting similar complaints to those suggested to Dr. Burns. (Tr. 182). The plaintiff described neck pain causing parasthesia in both arms. Dr. Stefanescu reviewed a November, 2003 MRI of the neck, considered in the prior final decision, showing a protrusion at C5-6 and a small tear at C6-7; he also noted that an MRI of the lumbosacral spine was mostly negative. (Id.). The plaintiff's current medications included the opioid pain medication Vicodin. The plaintiff's physical examination showed an inconsistency in range of motion testing of the neck and Dr. Stefanescu thought there might be a "voluntary component associated with the limited motion." Forward flexion, rotation, bending, and hyperextension of the trunk were also somewhat reduced, but the rest of the musculoskeletal examination was within normal limits. (Id.). There was some tenderness on examination of the cervical spine, but reflexes were normal and equal. (Tr. 183). Dr. Stefanescu planned to obtain additional tests including a nerve conduction study of the upper extremities in order to rule out radiculopathy.

(Id.).  However, the plaintiff testified that she could not afford this test or to follow up with Dr. Stefanescu.  (Tr. 466).

A state agency physician, Dr. Jorge Baez-Garcia, reviewed the record at this point and concluded that the new medical evidence of record showed no new impairments and the previous ALJ's residual functional capacity finding was still in effect.  (Tr. 199-206).

The remainder of the new evidence since the onset date consists primarily of office notes from Dr. George Chaney, who was the plaintiff's treating family physician.  He treated her for certain transient conditions such as sinusitis, and he also provided Xanax for an anxiety disorder and medications for high blood pressure, which was said to be controlled.  (Tr. 263, 373, 389).  In June of 2006, Dr. Chaney dealt with a complaint of neck pain, but the only abnormality he found was trapezius muscles that were tender to palpation.  Reflexes, strength, and sensation in the arms were normal.  (Tr. 370-1).  Dr. Chaney diagnosed cervicalgia, and prescribed pain medications and a muscle relaxer.  During follow-up treatments for the same complaint in July, August, September, and November, 2006, Dr. Chaney's findings did not change, and he specifically noted on each occasion that the plaintiff would have no work restrictions and could perform activities "ad lib."  (Tr. 351, 358, 365, 367-9).

In contrast to the indications in his office notes, Dr. Chaney submitted a residual functional capacity form on February 24, 2007 indicating that the plaintiff

08-229  Mae Hurt

could perform less than full-time standing, walking, and sitting, with a change of positions at least every 15 minutes, in addition to having numerous non-exertional restrictions involving postural limitations, limitations on reaching, handling, fingering, feeling, pushing, and pulling, as well as needing to avoid humidity, temperature extremes, and heights.  (Tr. 426-7).   The medical findings supporting these limitations were said to be cervical and lumbar disc disease.

The ALJ properly rejected Dr. Chaney's recent restrictions because they were inconsistent with his office notes as well as the other medical evidence.  (Tr. 19-20).  This rationale is clearly supported by substantial evidence.  Not only were Dr. Chaney's recorded physical findings almost non-existent, he specifically stated over a period of months that the plaintiff would have no work restrictions.  The ALJ did not "ignore" Dr. Chaney's opinion as suggested by the plaintiff in her brief, and provided good reasons for declining to accept it.  See Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

The plaintiff also asserts that Dr. Chaney's diagnosis of anxiety along with the prescription of Xanax should have caused the ALJ to adopt psychological restrictions.  However, even in his most recent opinion, Dr. Chaney did not mention any psychological problems as causing restrictions.  The plaintiff also testified that she had been on nerve medication for approximately 15 years as of the February, 2007 hearing (Tr. 460), a period of time which included her participation in the work force.  There is no indication that her condition worsened since the prior decision.

8

08-229  Mae Hurt

Finally, the only evidence from medical professionals specifically addressing this issue was from state agency psychologists, both of whom concluded that the plaintiff did not have a "severe" mental impairment.  (Tr. 159, 184).  Therefore, this argument is without merit.

The decision will be affirmed.

This the 21st day of May, 2009.


Signed By:

**G. Wix Unthank**

**United States Senior Judge**